*858 OPINION OF THE COURT
Gerald Harris, J.
The defendant, Sue Hernandez, is charged with two counts of aggravated harassment in the second degree, the first count alleging a violation of Penal Law § 240.30 (1), and the second a violation of Penal Law § 240.30 (2). The defendant moves to dismiss both counts as facially insufficient and as violative of her right to free speech and for other, procedural, relief.
The accusatory portion of the complaint alleges that the defendant, with the intent to harass, annoy, threaten and alarm another person, communicated by telephone, in a manner likely to cause annoyance and alarm and that she did so with no purpose of legitimate communication.
The factual allegations in the complaint aver that the complainant received a page on his beeper from an identified telephone number and that, when he returned the call immediately thereafter, the defendant answered and said in substance, “I’m gonna come to your job, cut your face, and something else will happen to your car.” The complaint further alleges that the complainant recognized the voice to be that of the defendant and that the call was annoying and harassing to complainant and placed him in fear of serious physical injury.
The defendant’s challenge to the first count is multifaceted. Defendant argues first that a charge of aggravated harassment is not made out unless it is alleged that the defendant initiated a telephone call. Defendant further argues that a beeper page does not fall within the statute and that because the alleged threat was made when the complainant returned the page, the communication was not initiated by the defendant.
Other grounds argued for by the defendant’s motion include the contention that a single, isolated phone call which does not contain an unequivocal threat cannot constitute aggravated harassment and that absent “fighting words,” incitement to imminent lawless action or a “true threat,” defendant’s speech was constitutionally protected.
Aggravated harassment charges were regularly dismissed by the courts when it appeared that the defendant had not initiated the offensive telephone call. (See, People v Monroe, 183 Misc 2d 374 [Crim Ct, NY County 2000]; People v Rusciano, 171 Misc 2d 908 [Just Ct, Town of Eastchester, Westchester County 1997]; People v Amalfi, 141 Misc 2d 940 [Rochester City Ct 1988].)
*859 However, in 2001, the Legislature amended Penal Law § 240.30 (1), dividing the statute into two separate subdivisions, the first subdivision, (1) (a), beginning with the word “communicates” and the second subdivision, (1) (b), with the phrase “causes a communication to be initiated.” “The Legislative Memorandum in support of the legislation . . . states that the amendment is intended to overrule case law which held that the term ‘communicates’ applies only to communication initiated by the defendant.” (Donnino, Supp Practice Commentaries, McKinney’s Cons Laws of NY, Book 39, Penal Law § 240.30, 2005 Pocket Part, at 74.)
The legislative memorandum reads: “There are instances in which a person who does not ‘initiate’ a communication, becomes aggressive and utilizes the communication to harass the other party. Defense attorneys have exploited this ambiguity in existing law, resulting in judges dismissing harassment charges solely because the defendant did not ‘initiate’ the communication.” (New York State Senate Mem in Support, 2001 McKinney’s Session Laws of NY, at 1558.) The legislative memorandum cites People v Monroe (supra) by way of example. This court is of the view that, given the statutory amendment, it is no longer necessary to allege or prove that a person initiated a telephone call to establish a violation of Penal Law § 240.30 (1).
Even if the legislative memorandum is deemed not conclusive of legislative intent, or a strict reading of the amended statute leaves in doubt whether a prosecution requires initiation of the communication by the defendant, defendant’s motion to dismiss on this ground would still lack merit. The facts alleged in the complaint, that the defendant paged the complainant on his beeper and left her own number for a return call, sufficiently allege that the defendant initiated or caused the ensuing communication which contained the alleged threats. As stated by the court in People v Monroe: “[W]here a defendant intentionally precipitates telephone contact from the complainant in order to use the instrumentality of the phone for the purpose of communicating threats or abuse . . . , the statute may well be violated.” (183 Misc 2d at 379; see, also, People v Shropshire, 181 Misc 2d 77, 81 [Crim Ct, Richmond County 1999] [“A telephone call to a beeper in which the caller affirmatively leaves information with the receiver is a ‘ communication’ within the statutory definition of Penal Law § 240.30 (1)”].)
Here, the complaint sufficiently alleges facts from which it reasonably may be inferred that the defendant invited, precipi *860 tated, caused or initiated the communication which is the subject of this prosecution.
Defendant’s argument that a call to a pager does not implicate the statute misses the point. It is the alleged threat made during the ensuing telephone conversation that gives rise to this prosecution. Defendant’s call to the complainant’s pager was merely the means by which she initiated the telephone call.
By returning the defendant’s page, the complainant, as defendant argues, may have surrendered his privacy but it does not follow that he forfeited all protection from any threats of violence directed at him during the telephone conversation. A prosecution under Penal Law § 240.30 (1) may be premised either upon an intolerable invasion of privacy (People v Shack, 86 NY2d 529 [1995]), or the communication of a threat of physical violence. (People v Dietze, 75 NY2d 47 [1989].) The former does not require the making of any threat, since it is the intrusive and harassing conduct that is punishable. (People v Mangano, 100 NY2d 569 [2003].) Here, the prosecution proceeds on the latter theory, that defendant communicated a threat of violence.
When speech is made criminal, it must fit within certain exceptions to the otherwise protective overhang of the First Amendment. The relevant protections are described in People v Smith (89 Misc 2d 789 [App Term, 2d Dept 1977], cert denied 434 US 920 [1977]). Communications which may properly be prohibited consistent with the First Amendment include communications which are obscene; threats which are unequivocal and specific or which by their very utterance tend to incite an immediate breach of the peace, also described as “fighting words.” (Smith, supra at 791-792.) Defendant argues that the statements attributed to her were merely crude outbursts or expressions of anger which are constitutionally protected, citing People v Dietze (75 NY2d 47 [1989]).
The issue here is whether the complaint sufficiently alleges “genuine” or “true” threats. A genuine threat is one that is serious, should reasonably have been taken to be serious, or was confirmed by other words or conduct. (People v Dietze, supra.) “ ‘True threats’ encompass those statements where the speaker means to communicate a serious expression of an intent to commit an act of unlawful violence to a particular individual or group of individuals.” (Virginia v Black, 538 US 343, 359 [2003], citing Watts v United States, 394 US 705, 708 [1969]; Vives v City of New York, 305 F Supp 2d 289 [SD NY 2003], revd on other grounds 393 F3d 129 [2d Cir 2004].)
*861 It must be shown that, under the circumstances, “an ordinary, reasonable recipient familiar with the context of the communication would interpret it as a true threat of injury,” whether or not the defendant subjectively intended the communication to convey a true threat. (United States v Francis, 164 F3d 120, 123 [2d Cir 1999].) Whether the threat meets this standard usually is a question of fact for the jury (id.; see, also, People v Cooper, 4 Misc 3d 788 [Nassau Dist Ct 2004]; cf. People v Bonitto, 4 Misc 3d 386 [Crim Ct, NY County 2004]).
Whether the defendant’s alleged statement reasonably was perceived by the complainant as a true threat of harm or was merely an outburst of frustration and anger not likely to instill fear is an issue for the jury. The court cannot find that the language alleged here is incapable of constituting a true threat as a matter of law. (Cf. People v Bonitto, supra.) The standard for upholding an accusatory instrument is a lesser one than at trial, where the People must prove their case beyond a reasonable doubt. (Id.; People v Cooper, supra; People v Tiffany, 186 Misc 2d 917 [Crim Ct, NY County 2001]; People v Price, 178 Misc 2d 778 [Crim Ct, NY County 1998]; People v Prisinzano, 170 Misc 2d 525 [Crim Ct, NY County 1996].) It is conceivable that additional evidence may be offered at trial from which a jury could rationally find that complainant might reasonably fear for his safety. (People v Olivio, 6 Misc 3d 1034[A], 2005 NY Slip Op 50300[U] [Crim Ct, NY County 2005].)
Thus, the question of whether defendant’s alleged utterance constituted a true threat must be resolved by a jury after trial. Accordingly, defendant’s motion to dismiss the first charge of the complaint, Penal Law § 240.30 (1), is denied.
The second charge in the complaint, Penal Law § 240.30 (2), must be dismissed as facially deficient for two reasons. That statute expressly addresses a situation where one “[m]akes a telephone call . . . with no purpose of legitimate communication.” The rationale discussed above, which permits prosecutions pursuant to Penal Law § 240.30 (1), even when the accused did not place the call, does not extend to Penal Law § 240.30 (2). The express language of the latter statute makes it applicable only to a person who makes a telephone call, a circumstance not alleged in this complaint.
The second charge of the complaint is also defective because it fails to allege facts from which it may reasonably be inferred that the telephone call had “no purpose of legitimate communication.” The ordinary understanding of that phrase *862 “means the absence of a reason or justification to engage someone, other than to hound, frighten, intimidate or threaten.” (People v Stuart, 100 NY2d 412, 428 [2003]; see also, People v Shack, supra.)
The absence of a legitimate purpose is an element of Penal Law § 240.30 (2), “and the mere recitation, in the accusatory instrument, of defendant’s threat to the complainants does not establish such element.” (People v Singh, 1 Misc 3d 73, 74 [App Term, 2d Dept 2003]; People v Olivio, supra.) Failure to allege facts which demonstrate lack of legitimate purpose, as, for example, that the statements attributed to defendant in the complaint constituted the entire conversation, results in a nonwaivable jurisdictional defect requiring dismissal of the charge. (People v Singh, supra; People v Olivio, supra.)
For these reasons, the motion to dismiss the second charge in the complaint, Penal Law § 240.30 (2), is granted.
Discovery is granted to the extent of the voluntary disclosure and bill of particulars furnished by the People. The People have not noticed statement evidence and there is no basis for a Dunaway /Huntley hearing. Any statement testimony which would require timely notice is precluded. The use of prior misconduct to cross-examine is referred to the trial court.