OPINION OF THE COURT
Miriam Cyrulnik, J.
*396 The defendant is charged with two counts of aggravated harassment in the second degree (Penal Law § 240.30 [1] [a], M).
The defendant moves to dismiss the charges against him, contending that they are facially insufficient, and that the statute is unconstitutional as applied in this prosecution. The People oppose.
Factual Background
The accusatory instrument alleges, in pertinent part, that on or about and between September 3, 2007 at 4:36 p.m. and September 4, 2007 at 9:05 a.m. at 397 East 49th Street, Brooklyn, N.Y.: “Deponent is informed by Suzette Davis that, during the above time period and at the above place, the defendant did send informant approximately six text messages to informant’s phone threatening informant by stating that defendant was outside of informant’s residence and informant would end up in the hospital.”
The People have filed and served the supporting deposition of Suzette Davis, thereby converting the complaint to an information.
Legal Analysis
To constitute a facially sufficient information, the accusatory instrument must contain (1) facts of an evidentiary nature which support or tend to support the crimes charged (CPL 100.15 [3]; People v Dumas, 68 NY2d 729 [1986]); (2) factual allegations in the information and supporting deposition that provide reasonable cause to believe that the defendant committed the crimes charged (CPL 100.40 [1] [b]); and (3) nonhearsay allegations which establish, if true, every element of the crimes charged. (CPL 100.40 [1] [c]; People v Alejandro, 70 NY2d 133 [1987].) Mere conclusory allegations will not suffice (People v Dumas, supra). A purported information which fails to satisfy these requirements is facially defective. (People v Alejandro, 70 NY2d at 139.)
In reviewing an accusatory instrument for facial sufficiency, “[s]o long as the factual allegations of an information give an accused notice sufficient to prepare a defense and are adequately detailed to prevent a defendant from being tried twice for the same offense,” the court should give it “a fair and not overly restrictive or technical reading.” (People v Casey, 95 NY2d 354, 360 [2000].) The facts alleged in the accusatory instrument do *397 not need to rise to the level of establishing guilt beyond a reasonable doubt; the prima facie case requirement in a pleading is not the same as the burden of proof required at trial. (See People v Henderson, 92 NY2d 677, 680 [1999].)
Moreover, in deciding this motion the court must confine its analysis to the allegations contained solely in the complaint and any depositions filed in support of it. (See People v Alejandro, 70 NY2d at 138; see also People v Konieczny, 2 NY3d 569, 576 [2004]; People v Voelker, 172 Misc 2d 564 [Crim Ct, Kings County 1997]; People v Pelt, 157 Misc 2d 90 [Crim Ct, Kings County 1993].) “[T]he court . . . may not consider [any] extraneous allegations contained in a motion to dismiss or an answer to a motion to dismiss.” (People v Voelker, 172 Misc 2d at 569.)
The relevant portion of Penal Law § 240.30 provides that:
“[a] person is guilty of aggravated harassment in the second degree when, with intent to harass, annoy, or alarm another person, he or she:
“1. Either (a) communicates with a person ... by telephone ... or any . . . form of written communication, in a manner likely to cause annoyance or alarm; or
“(b) causes a communication to be initiated by . . . electronic means . . . with a person ... by telephone ... or any . . . form of written communication, in a manner likely to cause annoyance or alarm.”
The defendant contends that these charges must be dismissed, in that his speech is constitutionally protected.
In order for speech to be criminalized, it must be more than mere abusive language, crude humor, or merely unpleasant communication. (See People v Dietze, 75 NY2d 47, 51 [1989] [holding “vulgar, derisive and provocative (speech)” may be protected, unless it presents a “clear and present danger of some serious substantive evil”]; see also People v Shack, 86 NY2d 529 [1995] [finding Penal Law § 240.30 constitutionally permissible in criminalizing speech which has no purpose of legitimate communication in order to protect individual privacy rights].)
The aggravated harassment statute (Penal Law § 240.30) targets “communications made to an unwilling recipient ‘wherein substantial privacy interests are invaded in an essentially intolerable manner.’ ” (People v Little, 14 Misc 3d 70, 72 [App Term, 2d Dept 2006], Iv denied 8 NY3d 924 [2007], quoting *398 People v Dupont, 107 AD2d 247, 252 [1st Dept 1985]; see also People v Bonitto, 4 Misc 3d 386 [Crim Ct, NY County 2004].) Unwanted speech which threatens, alarms, harasses, or annoys an individual may be proscribed without violating the speaker’s right to free expression. A speaker does not have unlimited rights to proclaim whatever speech he or she desires without regard to the impact on the recipient. Rather, the courts have traditionally balanced the right to free speech with the recipient’s entitlement to live without harassment and alarm, (See Cohen v California, 403 US 15, 21 [1971].) Indeed, “[a]n individual’s right to communicate must be balanced against the recipient’s right ‘to be let alone’ in places which the latter possesses a right to privacy” (People v Shack, supra at 536 [citation omitted]; see also People v Hernandez, 7 Misc 3d 857 [Crim Ct, NY County 2005]).
Defendant argues that, to the extent the statute criminalizes what he deems protected speech, it should be declared unconstitutional, and suggests that both the New York Court of Appeals and the Second Circuit Court of Appeals have already found it so. This court has read the opinions cited by the defendant and finds no support for his position within either of them. Further, this argument has been rejected by appellate courts considering the question. In People v Goldstein (196 Misc 2d 741, 746 [App Term, 2d Dept 2003]), Penal Law § 240.30 (1) was upheld as constitutional, as it limited the proscribed conduct and communication to that without any legitimate purpose except to cause annoyance and alarm to a private person, not a “public interest or facility.” Furthermore, the court in People v Little (14 Misc 3d at 72) observed that neither the Second Circuit Court of Appeals in Vives v City of New York (405 F3d 115 [2d Cir 2005]), nor the New York Court of Appeals in People v Mangano (100 NY2d 569 [2003]), the cases cited by the defendant, found the 2001 amended version of Penal Law § 240.30 unconstitutional.[1] (See also People v Chaves, 13 Misc 3d 782, 786 [Just Ct of Town of Ossining, Westchester County 2006] [holding that Penal Law § 240.30 (1) was neither unconstitutionally over-broad nor vague, and that the “alleged victim’s right of privacy trumps the right of the defendant to express, in a call to the complainant’s home, his intention to . . . attack her”].)
*399 In the instant case, the defendant is not being prosecuted for his speech. Culpability, if any, would arise “from his harassing conduct, not from any expression entitled to constitutional protection.” (People v Shack, 86 NY2d at 536; People v Gold-stein, supra.) The allegation that the defendant sent the complainant six text messages in less than 17 hours, stating that the defendant was outside of the complainant’s residence and she would end up in the hospital, if true, is not merely irritating or abusive, but threatening and would understandably cause the complainant to be fearful for her life.
The defendant urges the court to rely upon People v Mangano (supra), and find that his language was perhaps offensive but constitutionally protected. However, Mangano’s statements were conveyed toward a municipal hotline used, among other purposes, as a clearing house for complaints from the public. That is vastly different from the instant case where the alleged threats were specifically directed toward an individual, who did nothing to invite the receipt of such messages. (Compare People v Goldstein, supra).
Defendant also contends that the charges must be dismissed because any communication that may have come from him did not contain any genuine threat to the complainant.
The issue before the court is whether the accusatory instrument adequately alleges conduct which falls within the ambit of “behavior a state may constitutionally criminalize or whether, on the face of the pleading, the actions attributed to the defendant [in the accusatory instrument] constitute protected speech.” (People v Bonitto, 4 Misc 3d at 388.)
Speech that may constitutionally be proscribed includes, inter alia, “fighting words”[2] (Cohen v California, 404 US at 20) and “genuine [or true] threats” (People v Dietze, 75 NY at 54). A genuine threat has been defined as “one that is serious, should reasonably have been taken to be serious, or was confirmed by other words or conduct.” (People v Hernandez, 7 Misc 3d at 860.) A “true threat” includes “those statements where the speaker means to communicate a serious expression of an intent to commit an act of unlawful violence to a particular individual or group of individuals.” (Id.) “It must be shown that, under the circumstances, ‘an ordinary, reasonable recipient familiar with the context of the communication would interpret it as a true threat of injury,’ whether or not the defendant subjectively *400 intended the communication to convey a true threat.” (Id. at 861.)
Moreover, this case is also distinguishable from People v Yablov (183 Misc 2d 880, 882 [Crim Ct, NY County 2000]), where the defendant made vague threats to the complainant, such as “[i]f I don’t get the money you make tomorrow, I’ 1 [sic] go to the next step.” In dismissing the charges, the court concluded that there was “no . . . specificity of threat or clarity of intent or exigent circumstances” (id. at 886). In the present case, by contrast, the defendant texted the complainant that he was outside of her residence and would put her in the hospital. The substance of that message clearly conveys a greater sense of imminence, rather than some abstract notion of what might happen at an unspecified later time.
Ultimately, however, whether the threats alleged herein meet this standard is a question of fact for the jury. (Id.; People v Bonitto, supra.)
Finally, the discussion must turn to the mode of communication allegedly employed here — the use of text messaging. The Shack court noted that “an individual has a substantial privacy interest in his or her telephone; . . . the device is easily conceptualized as the functional equivalent of the mailbox.” (People v Shack, 86 NY2d at 536.) If the owner or possessor of the telephone has the “right to be free of unwanted telephone calls” (id.), that right can logically be extended to freedom from unwanted text messages received on that telephone.
With the advancement of technology, telephones have come to be used for more than simply placing and receiving calls. They now have the capability of sending and receiving messages and pictures, accessing the Internet, playing music, and much more. The defendant’s suggestion that text messages are brief, easy to ignore, and therefore not as serious as phone calls, letters, or e-mails, is without merit. On the contrary, text messages are communicated in writing, just like letters or e-mails, and access the recipient often instantaneously, like a phone call directly to the person’s cell phone. Additionally, the brevity of a text message has no impact on the severity of its meaning. A short text message can be more vicious and threatening than a lengthy, convoluted e-mail or letter. The defendant too easily dismisses the technological developments which have facilitated ever faster communication, and which, along with their many benefits, bring with them ever greater potential for abuse.
*401 This court finds that the factual allegations in the complaint are sufficient to support the charges against the defendant.
Accordingly, the motion to dismiss is denied and the matter is continued for trial.

. The Court in People v Mangano considered Penal Law § 240.30 (1) as it read prior to the November 1, 2001 amendment, which split the subdivision into two paragraphs (Penal Law § 240.30 [1] [a], [b]).

. This case does not involve the use of “fighting words.”